NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE ROE and RICHARD ROE o/b/o JOHN ROE (fictitious names to protect the name of the victim, a legally incompetent individual),<br><br>Plaintiffs,<br><br>v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, ANNA STUBBLEFIELD and JOHN DOES 1-10 (fictitious names and unidentified parties and/or entities),<br><br>Defendants. | Civil Action No. 13-1762 (SDW)<br><br>**OPINION**<br><br>July 9, 2013 |

**WIGENTON**, District Judge.

Before the Court is Rutgers, the State University of New Jersey's ("Rutgers") Motion to Dismiss the Complaint ("Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides the Motion to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **grants** Rutgers's Motion to Dismiss.

**FACTUAL HISTORY**

*Parties*

Plaintiff John Roe ("John Roe") is a thirty-two year old male with "severe mental retardation and cerebral palsy." (Compl. ¶ 3.) Because of his mental retardation, John Roe allegedly has the mental capacity of "an eighteen month old infant." (Compl. ¶¶ 3, 11.) John

1

Roe's mother, Plaintiff Jane Roe ("Jane Roe"), and John Roe's brother, Plaintiff Richard Roe ("Richard Roe"), are co-guardians of John Roe. (See Compl. ¶ 12.) Richard Roe was a doctoral student at Rutgers. (See Compl. ¶ 15.)

Defendant Anna Stubblefield ("Stubblefield") is a professor and the Philosophy Department Chairperson at Rutgers. (See Compl. ¶ 13.) Stubblefield allegedly "held herself out to be an expert in the field of [F]acilitative [C]ommunications, a technique which purportedly allows communicatively impaired and non-communicative individuals to communicate." (Compl. ¶¶ 7, 14.) Defendant John Does 1-10 are unidentified individuals who are legally responsible for the alleged harm and damages caused to Plaintiffs. (See Compl. ¶ 8.)

*Factual Allegations*

During the spring of 2008, Richard Roe attended a course taught by Stubblefield at Rutgers University. (See Compl. ¶ 15.) After being informed about Facilitative Communication, Richard Roe asked Stubblefield if the technique could be used on his brother, John Roe, who suffers from mental retardation. (See Compl. ¶¶ 17-18.) Stubblefield suggested Facilitative Communication with John Roe and began having sessions with John Roe at Rutgers, John Roe's home, the Cerebral Palsy Center of North Jersey, and other locations. (See Compl. ¶¶ 19-20, 24.) Stubblefield allegedly abused and sexually exploited John Roe at these sessions. (See Compl. ¶ 20.)

During the summer of 2010, Stubblefield "arranged for [John Roe] to allegedly present his alleged research at the Autism National Committee conference scheduled for October 2010." (Compl. ¶ 31.) According to Plaintiffs, "[Stubblefield] acted under the guise of facilitating [ ] John Roe's presentation to the conference." (Compl. ¶ 31.) Also during the summer of 2010, Stubblefield allegedly gained consent to take John Roe to a pool party and sexually exploited

2

him there. (See Compl. ¶¶ 34-36.) Stubblefield continued to meet with John Roe during the fall of 2010. (See Compl. ¶¶ 37-38.)

On or about May 25, 2011, Stubblefield met with Richard Roe and Jane Roe and informed them of her sexual relations with John Roe. (See Compl. ¶ 44.) According to Plaintiffs, Stubblefield said "that she had sexually molested [John Roe]." (Compl. ¶ 44.) According to Rutgers, "Stubblefield never told plaintiffs that she 'molested' John Roe, but rather that they were in love and had sexual relations, which she contended were consensual." (Rutgers Br. at 2 n.2.) Plaintiffs allege that Stubblefield's Facilitative Communication with John Roe was a farce. (See Compl. ¶ 46.) Richard Roe informed Rutgers about the sexual relations between Stubblefield and John Roe. (Rutgers Reply at 12.) Rutgers informed the police and Essex County Prosecutor and separated Stubblefield from the community. (Rutgers Reply at 12.)

**PROCEDURAL HISTORY**

On February 28, 2013, Plaintiffs filed the Complaint in the Superior Court of New Jersey, Law Division in Essex County. On March 21, 2013, Rutgers removed the action to this Court. On April 22, 2013, Rutgers filed the instant Motion to Dismiss.

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir.

2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556, U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id. at 1950.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual

elements from the legal conclusions.  See id.  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Id. at 210-11.  Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211 (quoting Iqbal, 566 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  Id. (citing Phillips, 515 F.3d at 234-35.)

**ANALYSIS**

**I.  Plaintiffs' Claims Regarding Alleged Violations of Plaintiffs' Constitutional Rights under the Fourth and Fourteenth Amendments (Counts I and II)**

Section 1983 confers liability on "[e]very person who, under color of any statute . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (2006).  To state a cause of action pursuant to § 1983, a plaintiff must allege two elements: (1) a violation of a right secured by the Constitution or federal law; and (2) that the violation of that right was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes."  Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979).  It follows that if the person charged has not acted under color of state law or a plaintiff has not been deprived of a constitutional or statutory right, there can be no § 1983 liability.  See id.  In this case, in Count I, Plaintiffs allege that Rutgers violated Plaintiffs' Constitutional Rights under the Fourth and Fourteenth Amendments.  In Count II, Plaintiffs allege that Rutgers's failure to train, supervise, or discipline violated Plaintiffs' Constitutional Rights under the Fourth and Fourteenth Amendments.

5

*Fourth Amendment*

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. "Generally, warrantless searches and seizures are per se unreasonable under the Fourth Amendment." U.S. v. Silveus, 542 F.3d 993, 999 (3d Cir. 2008) (internal citation omitted). To assert a Fourth Amendment claim, Plaintiff has to show that "a 'seizure' occurred and that it was unreasonable.'" Flood v. Schaefer, 367 F. App'x 315, 319 (3d Cir. 2010) (quoting Curley v. Klem, 499 F.3d 199, 203 n.4 (3d Cir. 2007)).

*Fourteenth Amendment*

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "In order to assert a claim for violation of procedural due process, a plaintiff must allege (1) a protected interest and (2) the State deprived plaintiff of that interest using procedures that were not constitutionally adequate." Oliver v. Dow, No. 10–1542, 2011 WL 601556, at * 8 (D.N.J. 2011 Feb. 17, 2011) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). "In order to make out a claim of substantive due process, 'a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action.'" O'Donnel v. Simon, No. 06-5351, 2007 WL 2159596, at *4 (D.N.J. July 25, 2007) (quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998)).

In Count I, Plaintiffs allege that Rutgers "intentionally and willfully disregarded [its] own policies and procedures and the laws of the State of New Jersey in prohibiting sexual contact between adults on individuals that lack the mental capacity to consent to sexual contact" and that

6

Rutgers "conspired to" or "intentionally and willfully violated" Plaintiffs' constitutional rights. (Compl. ¶ 56.) Plaintiffs concede that Rutgers "cannot be vicariously liable for [] Stubblefield's violation of John Roe's Civil Rights without some action or deliberate indifference to [John] Roe's Civil Rights." (Pls. Opp. at 12.) However, Plaintiffs argue that Rutgers "is liable for its own actions, policies and/or customs (permitting facilitative communication, human research and turning a deliberate indifference to the abuse perpetrated by its staff)." (Pls. Opp. at 12.)

Although Plaintiffs do not refer to any policy in the Complaint, in their brief, Plaintiffs point to Rutgers's "Institutional Review Board (IRB)" policy relating to the use of human subjects for research purposes. (Pls. Opp. at 4) The policy "protects the rights and welfare of human research subjects while facilitating ethical research." (Pls. Opp. at 4 (citing Ex. C).) Plaintiffs also allege it was Rutgers's "custom and practice [] to ignore [the ethical guidelines]."

In Count II, Plaintiffs allege that Rutgers "acted with a deliberate indifference to Plaintiff" in failing to "train, supervise and discipline its employees." (Compl. 63.) Furthermore, Plaintiffs allege that Rutgers facilitated Stubblefield's acts which resulted in violations of Plaintiffs' rights. (Compl. ¶¶ 63-68.)

Based on the Complaint and the briefs, this Court finds that Plaintiffs fail to set forth a viable claim for violation of Plaintiffs' Constitutional Rights in Counts I and II. Although Plaintiffs assert that Rutgers's "'customs' and 'policies' were the moving force behind the unconstitutional acts of its agent," Plaintiffs do not demonstrate that Rutgers permitted faculty to sexually assault human research subjects or that it condoned discrimination. As Rutgers points out, Plaintiffs do not allege how Rutgers disregarded its policies. Furthermore, Plaintiffs do not allege that Rutgers knew about Stubblefield's alleged sexual assault before they were notified by Richard Roe or that Rutgers and Stubblefield conspired to assault John Roe. Accordingly,

7

Plaintiff has not demonstrated that Rutgers has acted with "deliberate indifference" to Plaintiffs. In fact, when Rutgers became aware of Stubblefield's actions, Rutgers notified the police and the Essex County Prosecutor along with separating Stubblefield from the community. (See Rutgers Reply at 12.) With respect to failure to train, supervise, and discipline its employees, Plaintiffs fail to set forth factual allegations in support of this claim. Plaintiffs cannot rely solely on a theory of respondeat superior in the context of a § 1983 action. See Aruanno v. Blodgett, 339 F. App'x 258, 261 (3d Cir. 2009) (articulating that "respondeat superior cannot form the basis of liability under § 1983"). At bottom, Plaintiffs do not sufficiently allege viable claims in Counts I and II.

## II. Plaintiffs' Claims for Sexual Assault (Count III), Assault (Count V), and Invasion of Privacy (VII)

The principle of respondeat superior—liability of a public entity for the acts and omissions of its employees—is governed by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:2-2(a). Under the TCA, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). Four factors that courts should consider when determining whether an employee's act is within the scope of his employment include whether:

> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Davis v. Devereux Found., 209 N.J. 269, 303 (2012) (citing Restatement § 228(1).) See Cosgrove v. Lawrence, 215 N.J. Super 561, 563 (App. Div. 1987) (affirming trial court's finding that a county-employed therapist who engaged in sexual relations with a client were far outside

the scope of his employment and beyond the authorized treatment); Davis, 209 N.J. at 307 (holding that counselor's actions were "clearly outside of the scope of her employment," "inconsistent with [Defendant's] purpose in employing her," "not by any measure 'actuated' by a purpose to serve [Defendants]," and "could not have been foreseen by [Defendants]").

On the other hand, "an employee's act is outside of the scope of his or her employment 'if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Id. (citing Restatement § 228(2)). "Only rarely will intentional torts fall within the scope of employment." Id. (citing Schultz v. Roman Catholic Archdiocese of Newark, 95 N.J. 530, 535 n.1 (1984)). Furthermore, the TCA limits a public entity's vicarious liability for the criminal conduct of its employees. See N.J.S.A. 59:2-10 (stating that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct").

In this case, based on the allegations set forth in the Complaint, Plaintiffs fail to establish a viable claim against Rutgers for the intentional torts of sexual assault, assault, and invasion of privacy. Although Stubblefield was a Rutgers employee, her actions were allegedly intentional and not within the scope of her employment. Stubblefield was employed as a philosophy professor at Rutgers and the University had no role in her engaging in sexual relations with a non-student. Plaintiffs provide no facts relating the alleged sexual relations as being within Stubblefield's scope of employment. Furthermore, Stubblefield's alleged actions were not foreseeable and could not reasonably be actuated by a purpose of serving Rutgers. To the extent that Stubblefield's actions constituted criminal conduct, Rutgers would not be held vicariously liable for such acts. See N.J.S.A. 59:2-10. Based on the circumstances here, Plaintiffs' theory of

respondeat superior fails. Accordingly, the claims for intentional torts of sexual assault, assault, and invasion of privacy against Rutgers are dismissed.

### III. Plaintiff's Negligence Claim (Count IV)

Plaintiffs assert in the Complaint that Rutgers owed a duty of care to Plaintiffs based on its status as a state university. (See Compl. ¶¶ 77-78.) Relying on the theory of respondeat superior, Plaintiffs allege that Rutgers violated its duty of care through Stubblefield's acts, that such actions were reasonably foreseeable, and that the breach of duty to Plaintiffs justifies the imposition of punitive damages. (See Compl. ¶¶ 79-81.)

To establish negligence under a theory of respondeat superior, Plaintiffs must demonstrate that Stubblefield's actions were within the scope of her employment. See Davis, 209 N.J. at 303. Stubblefield's actions, as alleged in the Complaint, did not fall within the scope of her employment. See id. As this Court has already found, Rutgers cannot be held liable under a theory of respondeat superior for the actions of Stubblefield. Accordingly, Plaintiffs' negligence claim against Rutgers is dismissed.

### IV. Plaintiffs' Claim for Law Against Discrimination (Count VI)

New Jersey's Law Against Discrimination (NJLAD) protects employees from discrimination in the workplace. See Thurston v. Cherry Hill Triplex, No. 06-3862, 2008 WL 9374284, at *12 (D.N.J. Aug. 5, 2008) ("The NJLAD was enacted with the express purpose of protecting civil rights, particularly in the area of employment discrimination, where the NJLAD declares that the opportunity to gain employment without fear of discrimination is a civil right."). Additionally, NJLAD prohibits discrimination with regard to access to public places. Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 217 (App. Div. 2000) ("Among its other objectives, the LAD is intended to insure that handicapped persons will have full and equal

access to society, limited only by physical limitations they cannot overcome.") (internal quotations and citations omitted).

In this matter, Plaintiffs fail to adequately establish a claim under NJLAD. Plaintiffs do not allege that John Roe was an employee who suffered employment discrimination. Plaintiffs also fail to allege that John Roe was denied access to a public place. Instead, in their Complaint, Plaintiffs allege that Rutgers permitted Stubblefield "to target and exploit Plaintiff" based on his status as a disabled person. (Compl. ¶ 87.) Furthermore, Plaintiffs assert that "[a]s a result of the discrimination by Defendants . . . John Roe was assaulted, sexually abused, denied the appropriate educational opportunities, forced to attend events and go places without his consent or the informed consent of his Plaintiff guardians." (Compl. ¶ 88.) These allegations do not amount to anything more than conclusory statements. Even looking at the Complaint as a whole, Plaintiffs have not pled sufficient facts to establish a viable LAD claim. In their briefing, Plaintiffs argue that Rutgers is a place of "public accommodation" and focus on the applicability of LAD. (Pl. Opp. 23-26.) However, establishing that Rutgers is a public accommodation alone without any supporting allegations of denial of access is not enough to establish a claim under LAD.

## V. Plaintiffs' Claim for Interference with Parental-Child Rights (Count VIII)

Under the Restatement (Second) of Torts § 699, "[o]ne who, without more, alienates from its parent the affections of a child, whether a minor or of full age, is not liable to the child's parent." Restatement (Second) of Torts § 699 (1977). The accompanying comment states, in pertinent part,

> [i]f the parent has a cause of action against another for inducing a child to leave its home or for having sexual intercourse with it, any loss of the child's affection for its parent resulting from that conduct may be taken into account in

11

> determining the damages recoverable. But unless the loss of affection is accompanied or accomplished by these means, there can be no recovery for it.

Id. at comment (a); Scholz v. Scholz, 177 N.J. Super. 647, 650 (Ch. Div. 1980) ("It is the general law of torts regarding parent-child relations that an action for interference will not lie in the absence of either seduction of the child or removal of the child from the home.").

Plaintiffs allege that Stubblefield, as an agent of Rutgers, intentionally interfered with the parental-child rights of Jane Roe and John Roe. (Compl. ¶ 94.) According to Plaintiffs, Rutgers is liable if Plaintiffs can demonstrate that Stubblefield seduced John Roe. (Pls. Opp. 29.) Plaintiffs further argue that they "need only prove that such a claim is plausible." (Pls. Opp. 29.)

Rutgers argues that "Plaintiffs are in a quandary" with this argument. According to Rutgers, if John Roe has the mental capacity of "an eighteen month old infant," Plaintiffs would have to argue that someone with the mental equivalence of a toddler is capable of being "seduced" and subsequently alienated from his family. (Rutgers Br. 17; see Compl. ¶¶ 3, 11.) On the other hand, if John Roe had the mental capacity to be seduced and alienated from his family, "th[e]n he was a willful adult participant in the sexual acts." (Rutgers Br. 17.)

In its two-paragraph count, Plaintiffs fail to provide factual allegations to support a claim for Rutgers's interference with parental-child rights. Looking at the Complaint as a whole, Plaintiffs still do not allege sufficient facts to establish this claim. Additionally, Plaintiffs do not allege that John Roe was alienated from his family. As previously discussed, theories relying on respondeat superior are not applicable based on the facts of this case as Stubblefield's actions were far outside the scope of her employment. Accordingly, Plaintiffs' cause of action against Rutgers for interference with parental-child rights fails.

## VI. Leave to Amend Under Fed. R. Civ. P. 15(a)(2)

This Court has discretion to grant a party leave to amend its pleading under Federal Rule of Civil Procedure 15(a)(2). See Fed. R. Civ. P. 15(a)(2) (articulating that "the court should freely give leave [to amend] when justice so requires"). In this case, Plaintiffs are granted thirty days leave to amend the Complaint with respect to all counts.

**CONCLUSION**

For the reasons stated above, Rutgers's Motion to Dismiss is **GRANTED**. Plaintiffs are granted 30 days to amend the Complaint in a manner consistent with this Opinion.

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.