NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE ROE and RICHARD ROE o/b/o JOHN ROE (fictitious names to protect the name of the victim, a legally incompetent individual),<br><br>        Plaintiffs,<br><br>       v.<br><br>RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, ANNA STUBBLEFIELD and JOHN DOES 1-10 (fictitious names and unidentified parties and/or entities),<br><br>        Defendants. | Civil Action No. 13-1762 (SDW)<br><br><br>**OPINION**<br><br><br>January 6, 2014 |

**WIGENTON**, District Judge.

  Before the Court is Rutgers, the State University of New Jersey's ("Rutgers") Motion to Dismiss the Amended Complaint ("Motion to Dismiss") of Jane Doe and Richard Doe, on behalf of John Doe, (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides the Motion to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **grants** Rutgers's Motion to Dismiss.

**BACKGROUND**

  This case involves allegations of sexual molestation of John Roe—a thirty-two year old male with cerebral palsy and mental retardation—by Anna Stubblefield ("Stubblefield")—a Philosophy professor at Rutgers. (Am. Compl. ¶¶ 9-15, 111-14.) Stubblefield met with John

1

Roe on multiple occasions to perform Facilitative Communication, "a technique which purportedly allows communicatively impaired and non-communicative individuals to communicate." (Id. ¶¶ 69, 77.) On or about May 25, 2011, Stubblefield informed Jane Roe and Richard Roe that she had sexual relations with John Roe. (Id. ¶¶ 111-12.) Plaintiffs allege that Stubblefield "sexually molested [ ] John Roe who was physically and legally incapable of consenting to such sexual conduct." (Id. ¶ 112.)

On July 9, 2013, this Court issued an Opinion in the instant matter dismissing the Complaint against Rutgers without prejudice. (See Dkt. 19.) As the July 9, 2013 Opinion included an extensive recital of the facts, this Court will only provide the more recent background.

On August 9, 2013, Plaintiffs filed an Amended Complaint alleging the following causes of action against Rutgers: violations of Plaintiffs' Fourth and Fourteenth Amendment Rights (Counts I and II); negligence (Count IV); Law Against Discrimination (Count VI); and invasion of privacy (Count VII).[1] None of these causes of action are new; instead, Plaintiffs have added factual allegations in support of these claims.

According to the Amended Complaint, Rutgers receives grants from the National Institute for Health including funds to perform research on human test subjects. (Am. Compl. ¶¶ 16-20.) In performing research on human subjects, Rutgers is required to comply with regulations enforced by the Office for Human Research Protections. (Id. ¶¶ 22-23.) Pursuant to these regulations, Rutgers established an Institutional Review Board ("IRB") which "is responsible for protecting the rights of human research subjects regardless of the funding source." (Id. ¶¶ 24-26.)

---

[1] Plaintiffs do not re-assert claims for sexual assault and assault against Rutgers in the Amended Complaint. (See Am. Compl. ¶¶ 142-48, 155-57.)

Rutgers allegedly has two policies related to human research and testing—one which is "official" and the other which is "unofficial." (Id. ¶¶ 29-31.) The "official" policy requires a researcher to apply and receive permission from Rutgers to perform human research and testing. (Id. ¶¶ 33-35.) Additionally, "reasonable, necessary, appropriate and approved travel" related to the research is reimbursed by Rutgers. (Id. ¶¶ 39-42.) The "unofficial" policy of Rutgers is to "turn a blind eye to professors and/or researchers that conducted human research without applying for permission or complying with the 'official policy.'" (Id. ¶ 47.) Pursuant to the "unofficial" policy, Rutgers allegedly "d[oes] not require its staff, professors or researchers to request permission to conduct human research and/or testing;" avoids "policing itself" and does not report human research and testing; and uses the IRB as a "safe harbor of plausible deniability." (Id. ¶¶ 48-56.) Additionally, Plaintiffs allege that the IRB ignores illegal human research to avoid triggering an investigation that would jeopardize their funding. (Id. ¶¶ 57-63.) Plaintiffs claim that Stubblefield was aware of Rutgers's "unofficial" policy. (Id. ¶ 76.)

In 2010, Stubblefield attended conferences with John Roe to present papers and/or discuss her Facilitative Communication research relating to John Roe. (Id. ¶¶ 78-80, 96-99.) Rutgers reimbursed Stubblefield for expenses related to the conference. (Id. ¶¶ 81, 98.) Plaintiffs claim that Rutgers turned a blind eye to Stubblefield in failing to investigate her research, failing to question her controversial techniques, and paying for the expenses related to her research. (Id. ¶¶ 84-90, 99-103, 125-27.)

On September 27, 2013, Rutgers filed a Motion to Dismiss the Amended Complaint. Plaintiffs responded on October 21, 2013[2] and Rutgers replied on November 12, 2013.

---

[2] This Court notes that Plaintiffs' opposition brief exceeds the page limit under the local rules and Plaintiffs failed to obtain permission to file an oversized brief. See L. Civ. R. 7.2(b). In the interest of reaching a timely determination, this Court accepts the brief, but reminds Plaintiffs' counsel of the importance of complying with local rules.

3

**LEGAL STANDARD**

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief").

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556, U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). Id. at 1950.

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual elements from the legal conclusions. See id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips, 515 F.3d at 234-35.)

**DISCUSSION**

    **I. Plaintiffs' Claims Regarding Alleged Violations of Plaintiffs' Constitutional Rights under the Fourth and Fourteenth Amendments (Counts I and II)**

Section 1983 confers liability on "[e]very person who, under color of any statute . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2006). To state a cause of action pursuant to § 1983, a plaintiff must allege two elements: (1) a violation of a right secured by the Constitution or

federal law; and (2) that the violation of that right was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes." Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979). It follows that if the person charged has not acted under color of state law or a plaintiff has not been deprived of a constitutional or statutory right, there can be no § 1983 liability. See id.

Counts I and II of the Amended Complaint allege violations of Plaintiffs' Constitutional Rights under the Fourth and Fourteenth Amendments. (See Am. Compl. ¶¶ 129-42.)

### A. Fourth Amendment

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. "Generally, warrantless searches and seizures are per se unreasonable under the Fourth Amendment." U.S. v. Silveus, 542 F.3d 993, 999 (3d Cir. 2008) (internal citation omitted). To assert a Fourth Amendment claim, Plaintiff has to show that "a 'seizure' occurred and that it was unreasonable.'" Flood v. Schaefer, 367 F. App'x 315, 319 (3d Cir. 2010) (quoting Curley v. Klem, 499 F.3d 199, 203 n.4 (3d Cir. 2007)).

### B. Fourteenth Amendment

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "In order to assert a claim for violation of procedural due process, a plaintiff must allege (1) a protected interest and (2) the State deprived plaintiff of that interest using procedures that were not constitutionally adequate."

6

Oliver v. Dow, No. 10–1542, 2011 WL 601556, at * 8 (D.N.J. 2011 Feb. 17, 2011) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). "In order to make out a claim of substantive due process, 'a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action.'" O'Donnel v. Simon, No. 06-5351, 2007 WL 2159596, at *4 (D.N.J. July 25, 2007) (quoting Sameric Corp. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998)).

### *C. Analysis*

Plaintiffs allege in Count I that Rutgers "intentionally and willfully disregarded their own 'official policies' and procedures for human research and testing" and acted with "deliberate indifference" to Stubblefield's actions relating to John Roe. (Am. Compl. ¶¶ 130-31.) Plaintiffs set forth two main arguments relating to Count I. First, Plaintiffs argue that municipal bodies are not entitled to absolute immunity and can be sued for implementing an unconstitutional policy. (Pl. Opp. 13-14 (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978)).) Second, Plaintiffs argue that Rutgers is vicariously liable for Stubblefield's violations because it was "deliberately indifferent" to Plaintiffs' civil rights. (Id. at 14.) In support, Plaintiffs argue that Rutgers had an "obligation to police human research done by its employees at its facility," and it "turn[ed] a blind eye to illegal research that it paid for by funding conferences, hotels and travel." (Id. at 26.)

Plaintiffs allege in Count II that Rutgers failed to train, supervise, and discipline its employees including Stubblefield. (Am. Compl. ¶¶ 136-37.) Plaintiffs further allege that Rutgers failed to train, supervise, and discipline Stubblefield in allowing her to conduct research on "members of a vulnerable class, the disabled and minorities" and in "funding the research." (Id. ¶ 139-40.)

7

This Court finds that Plaintiffs fail to state viable claims against Rutgers in Counts I and II. In the Amended Complaint, Plaintiffs provide extensive details fleshing out Rutgers's policies with respect to human research and testing and reimbursement policies. Plaintiffs also allege that Rutgers has an "unofficial" policy of turning a blind eye to human research and testing. Furthermore, Plaintiffs argue that Rutgers failed to police human research, especially with respect to Facilitative Communication, where "the teacher must use a vulnerable class of people who are handicapped in that they cannot communicate." (Pl. Opp. 25.) Even taking all of these factual allegations as true, they do not amount to the institution or implementation of an unconstitutional policy which condones or encourages rape or sexual exploitation. Plaintiffs correctly note that municipal bodies can be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. However, the Supreme Court goes on to note that "Congress did not intend [municipal bodies] to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691. While a municipal body may be liable under 42 U.S.C. § 1983, it cannot be held solely liable on a theory of respondeat superior. Id. at 691 (concluding that "a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); see also Aruanno v. Blodgett, 339 F. App'x 258, 261 (3d Cir. 2009) (articulating that "respondeat superior cannot form the basis of liability under § 1983"). Plaintiffs do not argue—and cannot reasonably argue—that Stubblefield's alleged sexual exploitation of John Roe was performed pursuant to or as a result of Rutgers's official or unofficial policies.

Furthermore, the alleged facts do not support Plaintiffs' contention that Rutgers acted with deliberate indifference towards John Roe. The burden for demonstrating "deliberate indifference" is high; it requires a state of mind that is akin to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). "A showing of simple or even heightened negligence will not suffice." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 407 (1997).) Here, Plaintiffs have failed to show that Rutgers acted recklessly with regard to a known risk of harm. The fact that Rutgers reimbursed Stubblefield for expenses relating to her Facilitative Communication work with John Doe does not reflect Rutgers's indifference to any obvious risk. Plaintiffs do not allege that Rutgers knew of Stubblefield's actions, condoned her actions, or ignored them altogether.[3] Plaintiff claims that "[i]t is not important that Defendant Rutgers knew specifically that Plaintiff [John] Roe was being molested;" however, it is indeed an important factor to consider in determining whether Rutgers acted with "deliberate indifference." (Pl. Opp. 27.) After carefully considering Plaintiffs' arguments and factual allegations in the Amended Complaint, this Court finds that Plaintiffs fail to state a claim against Rutgers in Counts I and II.

## II.     Negligence (Count IV)

Plaintiffs allege in the Amended Complaint that Rutgers owed a duty of care to Plaintiffs based on its status as a state university. (See Am. Compl. ¶¶ 149-53.) Relying on the theory of respondeat superior, Plaintiffs allege that Rutgers violated its duty of care through Stubblefield's acts, that such actions were reasonably foreseeable, and that the breach of duty to Plaintiffs justifies the imposition of punitive damages. (Id. ¶¶ 152-54.)

---

[3] As this Court discussed in its previous Opinion, when Rutgers was made aware of Stubblefield's alleged sexual assault of John Roe, "Rutgers notified the police and the Essex County Prosecutor [and] separat[ed] Stubblefield from the community." (Dkt. 19, Op. at 8.)

9

As this Court noted in its previous Opinion, "[t]o establish negligence under a theory of respondeat superior, Plaintiffs must demonstrate that Stubblefield's actions were within the scope of her employment." (Dkt. 19, Op. at 10 (citing <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 305 (2012)).) Courts have found that actions are within the scope of employment if "the employee's responsibilities include enforcement of the employer's rules" and were in furtherance of complying with such rules. <u>Davis</u>, 209 N.J. at 305. Here, there is no allegation that Rutgers had a policy of encouraging sexual conduct with human research subjects. Accordingly, Stubblefield's alleged actions of sexual conduct and exploitation of John Roe cannot reasonably be said to be in furtherance of Rutgers's policies. As Stubblefield's actions were not within the scope of her employment, Plaintiffs cannot sustain a viable claim for negligence against Rutgers on the basis of vicarious liability. Plaintiffs do not raise additional arguments or new factual allegations that give rise to a viable negligence claim against Rutgers. Thus, Plaintiffs' claim for negligence against Rutgers fails.

### III. Law Against Discrimination (Count VI)

New Jersey's Law Against Discrimination (NJLAD) protects employees from discrimination in the workplace. <u>See</u> <u>Thurston v. Cherry Hill Triplex</u>, 941 F. Supp. 2d 520, 534 (D.N.J. 2008) ("The NJLAD was enacted with the express purpose of protecting civil rights, particularly in the area of employment discrimination, where the NJLAD declares that the opportunity to gain employment without fear of discrimination is a civil right."). Additionally, NJLAD prohibits discrimination with regard to access to public places. <u>Franek v. Tomahawk Lake Resort</u>, 333 N.J. Super. 206, 217 (App. Div. 2000) ("Among its other objectives, the [NJ]LAD is intended to insure that handicapped persons will have full and equal access to

society, limited only by physical limitations they cannot overcome.") (internal quotations and citations omitted).

Plaintiffs allege in the Amended Complaint that John Roe was "targeted, exploited, and discriminated against" based on his race and disabilities. (Am. Compl. ¶ 161-62.) This Court finds that Plaintiffs have failed to adequately plead a claim under NJLAD. Although Plaintiffs vigorously argue that Rutgers is a place of public accommodation, this fact is not in dispute. (See Def. Br. 17.) Absent from Plaintiffs' allegations and arguments—as was the case with the original Complaint—is that John Roe was denied access to Rutgers. Moreover, Plaintiffs fail to establish how John Roe was discriminated against by Rutgers. Mere conclusory assertions stating that John Roe was discriminated against based on his race and disabilities without support is not sufficient to state a claim. Thus, Plaintiffs' NJLAD claim against Rutgers is dismissed.

## IV. Invasion of Privacy (Count VII)

The principle of respondeat superior—liability of a public entity for the acts and omissions of its employees—is governed by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:2-2(a). Under the TCA, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). Four factors that courts should consider when determining whether an employee's act is within the scope of his employment include whether:

> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master; and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Davis, 209 N.J. at 303 (citing Restatement § 228(1))).

On the other hand, "an employee's act is outside of the scope of his or her employment 'if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" Id. (citing Restatement § 228(2)); see Cosgrove v. Lawrence, 215 N.J. Super 561, 563 (App. Div. 1987) (affirming trial court's finding that a county-employed therapist who engaged in sexual relations with a client were far outside the scope of his employment and beyond the authorized treatment). "Only rarely will intentional torts fall within the scope of employment." Davis, 209 N.J. at 303 (citing Schultz v. Roman Catholic Archdiocese of Newark, 95 N.J. 530, 535 n.1 (1984)). Furthermore, the TCA limits a public entity's vicarious liability for the criminal conduct of its employees. See N.J.S.A. 59:2-10 (stating that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct"). "The tort of invasion of privacy is defined as an intentional intrusion, 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns' that 'would be highly offensive to a reasonable person.'" G.D. v. Kenny, 205 N.J. 275, 309 (2011) (citing Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982).)

Plaintiffs argue that "Rutgers [ ] may be held vicariously liable for the tortious conduct of [Stubblefield]." (Pl. Opp. 39.) Plaintiffs further argue that Rutgers did "not fulfill its duty [to police human research], it turned a blind eye to [ ] Stubblefield's research," and "neglected to fulfil its legal obligations under Federal Regulation." (Id. at 41.)

As this Court has already determined, Plaintiffs fail to adequately demonstrate that Stubblefield's sexual conduct with John Roe was within the scope of her employment. Therefore, Plaintiffs cannot rely on the theory of respondeat superior to state a claim for invasion of privacy against Rutgers based on Stubblefield's actions. Moreover, Plaintiffs' theory that

12

Rutgers had a duty to police human research is not sufficient to state a claim for the intentional tort of invasion of privacy.  In support of this theory, Plaintiffs provide conclusory allegations and no facts pointing to Rutgers's intentional or tortious conduct.  Thus, Plaintiffs' claim for invasion of privacy against Rutgers fails.

### V.     Leave to Amend

This Court has discretion to grant a party leave to amend its pleading under Federal Rule of Civil Procedure 15(a)(2).  See FED. R. CIV. P. 15(a)(2) (articulating that "the court should freely give leave [to amend] when justice so requires").  Nevertheless, leave to amend should be denied "when [an] amendment would be inequitable or futile." Schomburg v. Dow Jones & Co., Inc., 504 F. App'x 100, 103 (3d Cir. 2012).  Here, Plaintiffs were afforded an opportunity to amend their Complaint; however, they were unable to successfully plead any viable claims against Rutgers.  This Court finds that it would be futile to allow Plaintiffs yet another opportunity to amend their Complaint.  Thus, Plaintiffs are not granted leave to further amend their Complaint.

**CONCLUSION**

For the reasons stated above, Rutgers's Motion to Dismiss is **GRANTED**.

                                                                          s/Susan D. Wigenton, U.S.D.J.

cc:  Madeline Cox Arleo, U.S.M.J.